UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO


| | | |
|---|---|---|
| PHILLIP DOUGLAS JACOBS, | ) | CASE NO. 3:08 CV 1262 |
| | ) | |
| Plaintiff, | ) | JUDGE DAVID A. KATZ |
| | ) | |
| v. | ) | |
| | ) | <u>OPINION AND ORDER</u> |
| HALL, <u>et al.</u>, | ) | |
| | ) | |
| Defendants | ) | |

<u>Pro se</u> plaintiff Phillip Douglas Jacobs filed the above-captioned action under 42 U.S.C. §§ 1983 and 1985, and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961(5), 1962(c) and (d), against North Central Correctional Institution ("NCCI") Receiving and Discharge Officers Hall, T. Hall, Rodriquez, and Contizano, NCCI Labor Relations Officer John Doe, the Ohio Department of Rehabilitation and Correction ("ODRC"), ODRC Director Terry J. Collins, ODRC Law Director John Doe, NCCI Inmate Count and Personnel Supervisor John Doe, NCCI Health Care Administrator John Doe, and NCCI Accreditation Officer Bolledoff. In the complaint, plaintiff alleges that he was transferred to another prison, suffered the loss of property, and was placed in a housing unit that permits inmates to possess tobacco products.

He seeks $ 23,000,000.00 in compensatory damages, $ 99,000.00 from each defendant in punitive damages, and costs associated with this litigation.

**Background**

Mr. Jacobs alleges that he was transferred from the Mansfield Correctional Institution to NCCI on March 12, 2008. He claims that although his property was approved for transfer, he was told he would have to leave it for processing. He states he was told he could retrieve it the following day. When he arrived the next day to reclaim his property, he was told by Officer Hall and Officer T. Hall that it was still being processed. He claims Officer Contizano was conducting the inspection. Form DRC-2055 is used to process property transferred between prisons. Mr. Jacobs claims that the form is inadequate and vague because it does not have a listing for fans, lamps, and other similar property. He indicates that when he was permitted to retrieve his property, he was told he could not have the fan or the lamp. He states he also noticed that some of his other property was damaged. He was given a conduct report for possessing contraband. A conduct hearing was held on March 27, 2008, at which time he was found guilty of the rule infraction. Mr. Jacobs claims he was not told that the fan or the lamp would be considered contraband, and therefore the loss of this property was a denial of due process. He further contends that he was the only prisoner who experienced difficulty transferring property between institutions. He asserts he was denied equal protection.

In addition, Mr. Jacobs contends that he was assigned to a housing unit in which inmates are permitted to possess tobacco products. He indicates that he was told that all the housing units were non-smoking dormitories. Inmates in some of the dorms, however, are permitted to possess tobacco products for use in designated areas outside of the housing unit. In

other dorms, inmates are not permitted to possess tobacco products. Mr. Jacobs claims he requires a smoke-free environment for health reasons. He contends that the dorm in which he was placed not only permits inmates to possess tobacco, but does not adequately enforce its smoke-free policy. He believes that tobacco products should be banned from all institutions thereby eliminating the risk of unauthorized useage. He claims that lock-downs are particularly difficult as inmates often smoke in their cells when they cannot get to a designated area. Mr. Jacobs states that another inmate transferred to NCCI at the same time he was transferred was given placement in a tobacco-free dorm. He claims that he was the victim of discrimination.

In his complaint, Mr. Jacobs asserts that the defendants are liable to him under §§1962(c) and (d) of RICO. He contends the parties "should be considered an enterprise serving as means or vehicle for others or individuals as perpetrators of the alleged racketeering acts which are continuing in pattern or practice." (Compl. at 4.) He further asserts that "Terry Collins, Contizano, Hall, T. Hall and Rodriquez, in furtherance of a continuing RICO conspiracy by other party co-conspirators, and in furtherance of schemes orchestrated by party individuals or employees to retaliate against plaintiff using fraudulent means to accomplish retaliation and extortion, intentionally, wilfully and with reckless disregard for truth, designed, created or manipulated the use of Department of Rehabilitation and Correction forms...in furtherance of a design and plan to allow or assist racketeering activities conducted within the enterprise among the conspirators." (Compl. at 4.) He claims "the adverse action and retaliations combined with extortion, fraudulent misrepresentations and threats of other adverse action or retaliation, directed at plaintiff by the party(s)-organization, duration and objectives, pose a threat of a series of injuries over a significant period of time, which constitutes a pattern of racketeering." (Compl. at 5.) Mr. Jacobs also claims

that he has a right to placement in a tobacco free housing unit and that the defendants were deliberately indifferent to his serious medical needs.

## Analysis

Although pro se pleadings are liberally construed, Boag v. MacDougall, 454 U.S. 364, 365 (1982) (per curiam); Haines v. Kerner, 404 U.S. 519, 520 (1972), the district court is required to dismiss an in forma pauperis action under 28 U.S.C. §1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact.[1] Neitzke v. Williams, 490 U.S. 319 (1989); Lawler v. Marshall, 898 F.2d 1196 (6th Cir. 1990); Sistrunk v. City of Strongsville, 99 F.3d 194, 197 (6th Cir. 1996). For the reasons stated below, this action is dismissed pursuant to §1915(e).

### RICO

Pursuant to 18 U.S.C. § 1964(c), RICO provides a private right of action for "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962]." In turn, § 1962 states in relevant part:

> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

---

[1] An in forma pauperis claim may be dismissed sua sponte, without prior notice to the plaintiff and without service of process on the defendant, if the court explicitly states that it is invoking section 1915(e) [formerly 28 U.S.C. § 1915(d)] and is dismissing the claim for one of the reasons set forth in the statute. McGore v. Wrigglesworth, 114 F.3d 601, 608-09 (6th Cir. 1997); Spruytte v. Walters, 753 F.2d 498, 500 (6th Cir. 1985), cert. denied, 474 U.S. 1054 (1986); Harris v. Johnson, 784 F.2d 222, 224 (6th Cir. 1986); Brooks v. Seiter, 779 F.2d 1177, 1179 (6th Cir. 1985).

> (d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection ... (c) of this section.

A "pattern of racketeering activity" requires at least two acts of "racketeering activity," § 1961(5), which are set forth in § 1961(1).[2] Thus, to prove that a defendant violated § 1962(c), it is necessary

---

[2] 18 U.S.C. § 1961(1) defines a "racketeering activity" as: (A) any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical..., which is chargeable under State law and punishable by imprisonment for more than one year; (B) any act which is indictable under any of the following provisions of title 18, United States Code: §201 (relating to bribery),§ 224 (relating to sports bribery), §§471, 472, and 473 (relating to counterfeiting), §659 (relating to theft from interstate shipment)...,§664 (relating to embezzlement from pension and welfare funds), §891-894 (relating to extortionate credit transactions), §1028 (relating to fraud and related activity in connection with identification documents), §1029 (relating to fraud and related activity in connection with access devices), §1084 (relating to the transmission of gambling information), §1341 (relating to mail fraud), §1343 (relating to wire fraud), §1344 (relating to financial institution fraud), §1425 (relating to the procurement of citizenship or nationalization unlawfully),§ 1426 (relating to the reproduction of naturalization or citizenship papers), §1427 (relating to the sale of naturalization or citizenship papers),§ 1461-1465 (relating to obscene matter), §1503 (relating to obstruction of justice), §1510 (relating to obstruction of criminal investigations), §1511 (relating to the obstruction of State or local law enforcement), §1512 (relating to tampering with a witness, victim, or an informant), §1513 (relating to retaliating against a witness, victim, or an informant), §1542 (relating to false statement in application and use of passport), §1543 (relating to forgery or false use of passport),§1544 (relating to misuse of passport), §1546 (relating to fraud and misuse of visas, permits, and other documents), §§1581-1591 (relating to peonage, slavery, and trafficking in persons), §1951 (relating to interference with commerce, robbery, or extortion), §1952 (relating to racketeering), §1953 (relating to interstate transportation of wagering paraphernalia), §1954 (relating to unlawful welfare fund payments), §1955 (relating to the prohibition of illegal gambling businesses), §1956 (relating to the laundering of monetary instruments), §1957 (relating to engaging in monetary transactions in property derived from specified unlawful activity), §1958 (relating to use of interstate commerce facilities in the commission of murder-for-hire), §§2251, 2251A, 2252, and 2260 (relating to sexual exploitation of children), §§ 2312 and 2313 (relating to interstate transportation of stolen motor vehicles), §§2314 and 2315 (relating to interstate transportation of stolen property), §2318 (relating to trafficking in counterfeit labels for phonorecords, computer programs or computer program documentation or packaging and copies of motion pictures or other audiovisual works), §2319 (relating to criminal infringement of a copyright), §2319A (relating to unauthorized fixation of and trafficking in sound recordings and music videos of live musical performances), §2320 (relating to trafficking in goods or services
(continued...)

for the plaintiff to prove that the defendant committed two predicate offenses. To violate §1962(d), a defendant must conspire with another person who commits two acts of racketeering activity <u>United States v. Joseph</u>, 781 F.2d 549, 554 (6th Cir.1986).  Although Mr. Jacobs asserts that the defendants deprived him of property and placed him in a housing unit where he is exposed to environmental tobacco smoke, none of the actions constitutes "racketeering activity" as defined by the statute.  Consequently, he has not stated a claim for a violation of either §§ 1962(c) or (d).

<u>42 U.S.C. § 1983</u>

Mr. Jacobs also asserts claims of denial of due process, retaliation and Eighth Amendment violations which can be construed as arising under 42 U.S.C. § 1983.  To establish a prima facie case under 42 U.S.C. § 1983, Mr. Jacobs must assert that a person acting under color of state law deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States.  <u>Parratt v. Taylor</u>, 451 U.S. 527, 535 (1981).  He fails to state a claim upon which relief can be granted against these defendants under § 1983 and these causes of action must be dismissed.

---

$^{2}$(...continued)
bearing counterfeit marks), §2321 (relating to trafficking in certain motor vehicles or motor vehicle parts), §§2341-2346 (relating to trafficking in contraband cigarettes), §§2421-24 (relating to white slave traffic), (C) any act which is indictable under title 29, United States Code, §186 (dealing with restrictions on payments and loans to labor organizations) or §501(c) (relating to embezzlement from union funds), (D) any offense involving fraud connected with a case under title 11 (except a case under §157 of this title), fraud in the sale of securities, or the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in a controlled substance or listed chemical (as defined in §102 of the Controlled Substances Act), punishable under any law of the United States, (E) any act which is indictable under the Currency and Foreign Transactions Reporting Act, (F) any act which is indictable under the Immigration and Nationality Act, § 274 (relating to bringing in and harboring certain aliens), § 277 (relating to aiding or assisting certain aliens to enter the United States), or §278 (relating to importation of alien for immoral purpose) if the act indictable under such  of such Act was committed for the purpose of financial gain, or (G) any act that is indictable under any provision listed in §2332b(g)(5)(B).

As an initial matter, several of the defendants are not proper parties to this action. Mr. Jacobs seeks monetary damages against the Ohio Department of Rehabilitation and Correction. The Eleventh Amendment is an absolute bar to the imposition of liability upon states and state agencies. Latham v. Office of Atty. Gen. of State of Ohio, 395 F.3d 261, 270 (6th Cir. 2005); Bouquett v. Clemmer, 626 F. Supp. 46, 48 (S.D. Ohio 1985).

Moreover, to hold the remaining defendants liable under § 1983, the plaintiff must clearly demonstrate that the particular defendant was personally involved in the activities which form the basis of the alleged unconstitutional behavior. Rizzo v. Goode, 423 U.S. 362, 371 (1976); Mullins v. Hainesworth, No. 95-3186, 1995 WL 559381 (6th Cir. Sept. 20, 1995). Although Mr. Jacobs names ten individuals as defendants in this action, there are no allegations in the complaint which reasonably associate the NCCI Labor Relations Officer, the ODRC Law Director, the NCCI Health Care Administrator, or the NCCI Accreditation Officer with any of the actions giving rise to the claims in this complaint. These individuals are dismissed as defendants in this action.

Similarly, respondeat superior is not a proper basis for liability under § 1983. Leary v. Daeschner, 349 F.3d 888, 903 (6th Cir.2003); Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984). Nor can the liability of supervisors be based solely on the right to control employees, Bellamy, 729 F.2d at 421, or "simple awareness of employees' misconduct," Leary, 349 F.3d at 903; Bellamy, 729 F.2d at 421. In addition, "a supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor 'either encouraged the specific incident of misconduct or in some other way directly participated in it.'" Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir.1999) (quoting Hays v. Jefferson County, 668 F.2d 869, 874 (6th Cir.1982)). While Mr. Jacobs includes a substantial amount of legal rhetoric, when closely examined, the

7

complaint simply contains no facts which reasonably associate ODRC Director Terry Collins or the NCCI Inmate Count and Personnel Supervisor to any of the claims set forth by plaintiff.

Mr. Jacobs then claims that Officers Hall, T. Hall, Rodriquez, and Contizano denied him due process by confiscating his personal property. The Fourteenth Amendment provides that a state may not "deprive any person of life, liberty, or property, without due process of law." It does not prohibit every deprivation by the state of a person's life, liberty or property. Harris v. City of Akron, 20 F.3d 1396, 1401 (6th Cir. 1994). Only those deprivations which are conducted without due process are subject to suit under 42 U.S.C. § 1983. Id.

As an initial matter, it is not clear whether Mr. Jacobs intended to assert a claim for procedural due process, substantive due process, or both. To the extent that he intended to assert a procedural due process claim, it is subject to dismissal. To prevail on a procedural due process claim, the plaintiff must plead and prove either that he was deprived of property as a result of an established state procedure that itself violates due process rights; or that the defendants deprived him of property pursuant to a random and unauthorized act and that available state remedies would not be adequate to redress the deprivation of property. Macene v. MJW, Inc., 951 F.2d 700, 706 (6th Cir 1991); see Vicory v. Walton, 721 F.2d 1062, 1064 (6th Cir. 1983). There is nothing in the amended complaint which suggests Mr. Jacobs is challenging an established state procedure, statute or local ordinance. Instead, it appears he is asserting that he was deprived of his property due to unauthorized acts of the defendants.

To state a procedural due process claim based upon alleged unauthorized acts of the defendants, the plaintiff must also plead and prove that state remedies for redressing the wrong are inadequate. Macene, 951 F.2d at 706; Vicory, 721 F.2d at 1064. A remedy is available in the Ohio

8

Court of Claims. See Haynes v. Marshall, 887 F.2d 700, 704 (6th Cir.1989).  There are no facts in the pleading reasonably suggesting that the available state remedies were inadequate to redress the wrong.

To the extent that Mr. Jacobs intended to assert a substantive due process claim, it too is subject to dismissal.  There are two types of substantive due process claims.  The first type includes claims that involve official acts which cause a deprivation of a fundamental right.  Mertik v. Blalock, 983 F.2d 1353,1367 (6th Cir. 1993); Parate v. Isibor, 868 F.2d 821, 831 (6th Cir. 1989).  Mr. Jacobs does not allege any facts to suggest that he was deprived of a fundamental right.  The other type of substantive due process claim is directed at official acts that "so shock the conscience" that they are unconstitutional regardless of the procedural protections provided.  Parate, 868 F.2d at 832.  A citizen does not suffer a constitutional deprivation every time he is subjected to some form of harassment by a state agent.  Id. at 833.  The conduct asserted must be "so severe, so disproportionate to the need presented, and such an abuse of authority as to transcend the bounds of ordinary tort law and establish a deprivation of constitutional rights."  Id.  There are no facts presented in plaintiff's complaint to suggest the defendants' confiscation of Mr. Jacobs's property met this extreme standard.

Mr. Jacobs also asserts that the defendants retaliated against him.  He contends that "in furtherance of a continuing RICO conspiracy by other party co-conspirators, and in furtherance of schemes orchestrated by party individuals or employees to retaliate against plaintiff using fraudulent means to accomplish retaliation and extortion, intentionally wilfully and with reckless disregard for truth, designed, created or manipulated the use of Department of Rehabilitation and Correction forms...in furtherance of a design and plan to allow or assist racketeering activities

9

conducted within the enterprise among the conspirators." (Compl. at 4.) He fails, however, to provide factual allegations to support these conclusions. Legal conclusions alone are not sufficient to present a valid claim, and this court is not required to accept unwarranted factual inferences. Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987); see also, Place v. Shepherd, 446 F.2d 1239, 1244 (6th Cir. 1971) (conclusory section 1983 claim dismissed).

In addition, Mr. Jacobs claims he was denied equal protection. He states that other inmates did not have problems transferring property between institutions. He further states that another inmate was placed in a tobacco free dorm while he was placed in the non-smoking dorm. The administration by state officers of a state policy which is neutral on its face, and which results in unequal application to those entitled to be treated alike, is not a denial of equal protection unless there is shown to be intentional or purposeful discrimination for an unlawful reason. Snowden v. Hughes, 321 U.S. 1, 8 (1944); Charles v. Baesler, 910 F.2d 1349, 1356 (6th Cir. 1990). Discriminatory purpose "implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker...selected...a particular course of action at least in part 'because of,' not merely 'in spite of' its adverse effects upon an identifiable group." Personnel Admin. of Mass. v. Feeney, 442 U.S. 256, 279 (1979); Coyne v. City of Sommerville, 972 F.2d 440, 445 (1st Cir. 1992). A discriminatory purpose will not be presumed. Tarrance v. State of Florida, 188 U.S. 519, 510 (1903).

The complaint contains no set of facts which would support an allegation that the actions were performed with a purposeful intent to discriminate against the plaintiff. Even if the decisions which favored other inmates were the result of the misapplication of the policy, the actions described do not rise to the level of intentional invidious discrimination. Charles, 910 F.2d

10

at 1357. An equal protection violation is not established simply by applying the epithets "willful" and "malicious" to the allegations. Coyne, 972 F.2d at 445.

Finally, Mr. Jacobs claims that the defendants subjected him to cruel and unusual punishment. He states that although he has been placed in a non-smoking housing unit, the unit does not ban possession of tobacco products. He claims that inmates often break the rules and smoke in the dorms, thereby subjecting him to unwanted environmental tobacco smoke. Prison officials may not deprive inmates of "the minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). To state a claim for relief, a plaintiff must first plead facts which, if true, establish an objective component that a sufficiently serious deprivation has occurred. Wilson v. Seiter, 501 U.S. 294, 298 (1991). Seriousness is measured in response to "contemporary standards of decency." Hudson v. McMilian, 112 S. Ct. 995, 1000 (1992). Routine discomforts of prison life do not suffice. Id. Only deliberate indifference to serious medical needs or extreme deprivations regarding the conditions of confinement will implicate the protections of the Eighth Amendment. Id. at 1000. Plaintiff must also establish a subjective element showing the prison officials acted with a sufficiently culpable state of mind. Id. A prison official violates the Eighth Amendment only when both the objective and subjective requirements are met. Farmer v. Brennan, 511 U.S. 825, 834 (1994).

Mr. Jacobs fails to establish both of these elements. As an initial matter, he states that he has a medical need for a tobacco-free environment, but he does not elaborate on that statement. The Eighth Amendment does not mandate a smoke-free prison. Scott v. District of Columbia, No. 97-7064, slip op. at *3 (D.C.Cir. April 3, 1998). The issue is whether the prisoner's pre-existing medical condition is such that exposing him to environmental tobacco smoke

represents a serious health risk. Hunt v. Reynolds, 974 F.2d 734, 735 (6th Cir. 1992). Mr. Jacobs cursory statement regarding his health, is insufficient to establish that he has a serious medical need for a smoke-free environment.

Moreover, even if Mr. Jacobs had set forth facts to suggest that his medical condition is sufficiently serious to require a smoke free environment, he has failed to establish the subjective component of his Eighth Amendment claim. He must demonstrate that these defendants acted with deliberate indifference to his serious medical needs. Farmer, 511 U.S. at 835. An official acts with deliberate indifference when "he acts with criminal recklessness," a state of mind that requires that the official act with conscious disregard of a substantial risk of serious harm. Id. at 837. Mere negligence will not suffice. Id. at 835-36. Mr. Jacobs does not allege facts to reasonably suggest that the four receiving and discharge officers, the Labor Relations Officer, the ODRC Director, the ODRC Law Director, the Inmate Count and Personnel Supervisor, the Health Care Administrator, or the Accreditation Officer were responsible for his placement in the dorm, or were responsible for enforcement of the non-smoking policy that is in place for the housing unit. There are no allegations suggesting that any of these defendants knew of his medical condition and deliberately failed to enforce the policy. There is no indication that these defendants personally engaged in conduct which violated Mr. Jacobs's Eighth Amendment rights.

## Conclusion

Accordingly, this action is dismissed pursuant to 28 U.S.C. § 1915(e). Further, the court certifies pursuant to 28 U.S.C. § 1915(a)(3) that an appeal from this decision could not be

taken in good faith.[3]

       IT IS SO ORDERED.

                          /s/ David A. Katz

                          DAVID A. KATZ
                          UNITED STATES DISTRICT JUDGE

---

[3]    28 U.S.C. § 1915(a) provides, in pertinent part:

      An appeal may not be taken in forma pauperis if the trial court certifies that it is not taken in good faith.